## Czelusniak v. Olyphant Borough et al.

*Maurice V. Cummings*, for appellant.

*Stanley M. Evans*, for respondents.

ROBINSON, J., May 2, 1952.—This is an appeal from an ordinance of the Borough of Olyphant. The complaint, filed by a taxpayer under section 1010 of the Borough Code of July 10, 1947, P. L. 1621, 53 PS §12900, attacks the legality of the legislation enacted and approved March 3, 1952.

The complaint alleges the ordinance is illegal in that it purports to create a "board" to administer the affairs of the electric power utility owned and operated by the

borough. The board provided for by the enactment consists of the borough council and the burgess. Section 1 of the ordinance authorizes the board to promulgate rules and regulations for the operation of the utility and to employ a superintendent and other necessary help. The board is also authorized to elect a president, secretary and treasurer and to pay the latter two officers. Section 2 provides that the burgess as a member of the board is entitled to vote on all matters of business. Section 3 requires that the funds, debts and obligations of the utility shall be separate from those of the borough although payment of bills and expenses in the operation of the utility must be acted on and approved by the board and checks therefor are required to be signed by the president, secretary, treasurer and the borough controller. The complaint alleges that the electric power is purchased from the Scranton Electric Company and resold in the borough and that three fourths of the borough's gross income is received from the profits of the utility. The complaint avers that the ordinance constitutes an unlawful delegation of the authority vested in the council, an enlargement of the power given to the burgess and an action not permitted by the provisions of the Borough Code.

Respondents filed a demurrer to the allegations of the complaint.

It is settled law that municipal corporations are but agents of the Commonwealth that are given certain subordinate governmental functions for obvious reasons of public convenience. The powers of a borough and its officials are determined by the legislation which creates and governs them. There are no vested rights to the offices of the borough or in the corporate powers with which the municipality is invested. Commonwealth v. Moir, 199 Pa. 534. Whatever is done by a

borough council or officer of the municipality outside the scope of the governing legislation is illegal.

Section 2470 of the Borough Code authorizes a borough to "manufacture or purchase electricity for the use of the inhabitants of the borough" and charges therefor are required to be made and regulated for general borough purposes in relief of taxes on real estate: Act of July 19, 1951, P. L. 1026, 53 PS §13376. It is clear that the management and operation of the business of the utility must be undertaken within the provisions of the Borough Code. The responsibilities of control, management and direction of the municipal electric plant are vested in the borough council and they cannot be delegated to a body not answerable to the law regulating the government of the borough. Borough property must be administered by the public officials to which it is entrusted and the duties and responsibilities in connection therewith cannot be delegated to a private body.

The creation by the ordinance of an independent body and the delegation to it of authority to make rules and regulations, to elect officers and pay salaries and to keep "funds", debts and obligations of the utility separate from other property and obligations of the borough is without authority in law. Furthermore, section 2 of the ordinance which declares the burgess to be a member of the board is in violation of section 1020 of the code (53 PS §12931) which provides that:

"No burgess shall hold any other borough office or appointment. . . " and that he "shall not . . . vote at the meetings of the council" except of course to break a tie under section 1003 (53 PS §12893).

What was said in Weatherly Borough v. Warner, 148 Pa. Superior Ct. 557, is applicable to the point here considered:

"We think that this, in effect, was a delegation of authority by the borough to a special commission to

make a municipal improvement. It is nonetheless a commission though appointed for a specific purpose and not to make borough improvements generally.

"The general rule is that a municipal legislature cannot delegate its powers, and this rule requires that the body having the authority to order the improvement shall itself designate and describe the improvement': Elliott, Roads & Streets, §619. More specifically, the ordinance ignores the prohibition of Art. III, §20, of the state constitution which provides: 'The General Assembly shall not delegate to any special commission, . . . any power to make, supervise or interfere with any municipal improvement . . . or to levy taxes or perform any municipal function whatever.' These are not cases where only the performance of the work is assigned to ministerial agents of the municipality; the borough here delegated both the power to decide what was to be done as well as how it was to be done."

Respondents contend that the machinery provided by the ordinance is practically necessary for the operation of the borough-owned electric system. They argue that the council consists of four members who are continually divided in the transaction of business pertaining to the electric utility; that the burgess is thus required to vote to resolve the division; that such a situation places an undue burden on the borough's executive officer; that the magnitude of the business of the electric system requires a management which the council in its present state is unable to provide, and that the ordinance is only declaratory of what actually occurs as a practical effect of the recurring divisions in council.

We can readily appreciate the difficulties involved in maintaining proper electric power service under such management. It is a recognized disadvantage of municipal ownership and management which the legis-

lature was presumably aware of when it authorized boroughs to deal in electricity for the benefit of their inhabitants. However, the practical necessities of a situation do not permit the borough council to operate dehors the provisions of the Borough Code. Purely ministerial duties in regard to the operation of the utility can be placed in charge of technical experts responsible to the council and as suggested a committee of three councilmen may be appointed by the president of that body to supervise the business thereof, but the basic responsibility is that of the entire councilmanic body and it cannot be delegated.

Now, May 2, 1952, the appeal from the ordinance complained of is sustained.